Case: 1:21-mj-00637
Assigned to: Judge Meriweather, Robin M.
Assign Date: 10/26/2021
Description: COMPLAINT W/ ARREST WARRANT

## AFFIDAVIT

1.      My name is Jynika Williams and I am a Special Agent with the Federal Bureau of Investigation (FBI) and has been so employed since February 2015. I have training in the enforcement of laws of the United States, including training in the preparation, presentation, service, and execution of criminal complaints and arrest and search warrants. I completed a twenty-one week training program at the FBI Academy, which included instruction in the investigation of various criminal offenses governed by federal law, and I have received advanced training in matters relating to criminal investigations. I am currently assigned to investigate public corruption and civil rights matters at the FBI Washington Field Office. Additionally, I was tasked with investigating criminal activity in and around the Capitol grounds on January 6, 2021. I am authorized by law or by a Government agency to engage in or supervise the prevention, detention, investigation, or prosecution of violations of Federal criminal laws.

2.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3.      The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification were allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

4.      On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Michael Pence was present and presiding, first in the joint session, and then in the Senate chamber.

5.      As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

6.      At such time, the certification proceedings were still underway, and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

7.      Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

8.      During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

9.      In July 2021, the FBI began an investigation into whether GREGORY LAMAR NIX ("NIX") was unlawfully present inside the U.S. Capitol building on January 6, 2021.  NIX was recorded inside and outside the Capitol Building on U.S. Capitol security video footage, as well as on footage posted to a social media outlet. NIX's presence at the U.S. Capitol was also confirmed through analysis of records from Google, as described below.

10.      On July 21, 2021, the subject of an ongoing FBI investigation ("Subject 1"), was interviewed by me and other investigators.  During the interview, Subject 1 identified NIX as an individual who had briefly entered the U.S. Capitol unlawfully on January 6, 2021. Subject 1 indicated that he/she knew NIX prior to January 6. During the interview, Subject 1 was shown Capitol Building surveillance footage from inside of the Capitol Building. Subject 1 identified one of the individuals in the video as NIX.[1]  The videos shown to Subject 1 were from between 2:42 and 2:53 PM.  The individual identified as NIX was an older white male with gray facial hair and was wearing a black and neon yellow hooded sweatshirt, as shown in the screenshot below depicting the interior of the Capitol Building:

_____

[1] I cannot speak to the credibility of Subject 1, beyond stating that Subject 1 minimized his/her own role in the events of January 6, 2021, and omitted other relevant information known to Subject 1, during this interview.  However, the FBI views Subject 1's identification of NIX as highly credible for several reasons.  First, it is corroborated by NIX's appearance in the video screenshots below, which closely match the driver's license photograph of a GREGORY LAMAR NIX.  Second, NIX's presence in the U.S. Capitol was later corroborated by cell-site and Google location data, which indicated that a device using what the FBI believes to be NIX's phone number and email address was present in the U.S. Capitol at the same times and approximate locations as the individual in the CCTV footage described below as NIX.  Third, business records from AT&T Corporation show phone calls and text messages between Subject 1 and the phone number identified as NIX's (see below) around January 6, 2021.  Finally, Subject 1 was not shown the videos below of NIX assaulting police officers, and did not disclose to law enforcement that NIX had engaged in that misconduct.  Thus, Subject 1 may have believed that NIX was not of interest to the FBI at the time Subject 1 identified NIX.



11.     In addition, I reviewed an open-source video that was posted to a website hosted by ProPublica; the website indicated that the video was purportedly recorded at 4:26 PM on January 6, 2021. In the video, NIX, wearing what appears to be the same black and neon yellow hooded sweatshirt seen on the Capitol Building surveillance footage shown to Subject 1, is standing close to Subject 1. (This footage shows a small "USA" logo or design on the right side of the chest of the sweatshirt.  This logo or design is also visible in the screenshots under Paragraphs 13, 15, and 17 below.)  Cropped screenshots of NIX from that video are below:



12.     I have reviewed a driver's license photograph for a GREGORY LAMAR NIX, residing in Cleveland, Alabama.  The driver's license photograph appears to depict the same individual as the person pictured above.

13.     In early October 2021, a witness (W-1) was interviewed.  W-1 stated that W-1 has known the GREGORY NIX who resides in Cleveland, Alabama for several years.  W-1 further stated that W-1 was aware that NIX had traveled to the U.S. Capitol Building on January 6, 2021, and that W-1 was upset that NIX had done so.  W-1 was shown three photographs of the subject shown in this complaint with a neon green and black hooded sweatshirt; W-1 identified the individual in all three photographs as NIX.  These are cropped versions of the photographs she was shown:



14.     I have reviewed additional footage of these events, including surveillance video provided by the U.S. Capitol Police. While reviewing the additional footage from locations inside and outside the U.S. Capitol Building, I observed the subject identified as NIX outside the East House Doors. I identified NIX in this surveillance footage based on his clothing, as he is wearing the same black and neon yellow hooded sweatshirt with what appears to be a small design on the right chest of the sweatshirt, as well as his facial hair, hair color, and facial features. Specifically, in one surveillance video, NIX is shown outside of the East House Doors located at the Southeast side of the Capitol Building. Approximately four minutes into the approximately twelve-minute video, at what I believe to be approximately 2:21-22 PM ET, NIX is observed attempting to breach the aforementioned doors by banging the end of a white flagpole repeatedly against the door or its glass panes.  The photo below is a screenshot of NIX standing at the East House Doors taken from U.S. Capitol Police surveillance video:



15.      The photo below is a screenshot taken from U.S. Capitol Police surveillance video of NIX during his attempt to breach the East House Doors using the flagpole:



16.      Soon thereafter, approximately six minutes into the video, or at approximately 2:23-24 PM ET, NIX is observed verbally engaging with U.S. Capitol Police Officers who arrived to stand guard in front of the East House doors.



17.     At approximately ten minutes and twenty-eight seconds into the video, or at approximately 2:27 PM ET, NIX is observed physically assaulting an identified U.S. Capitol Police Officer ("Victim 1') with the white flagpole NIX had in his possession. NIX is observed whacking Victim 1 with the white flagpole and thrusting and throwing the flagpole at Victim 1. Based on my review of the video, I believe NIX attempted to physically assault Victim 1 using the flagpole on seven occasions, with the flagpole contacting Victim 1 approximately two times (with one occurrence captured by the inserted oval below).  During an interview with Victim 1, Victim 1 stated that the flagpole had struck him on the head during one of these assaults, and that, the next day, he had a knot on his head as a result.



18.     A few minutes later, at approximately 2:30 PM ET, after the officers depart, NIX is seen on surveillance footage again appearing to attempt to smash the East House Doors' glass panes.  NIX first attempts to do so using what appears to be a black baton. This footage was shown to Victim 1, who during an interview identified the object to be an "ASP" or baton. Although it is unclear as to how NIX came into possession of the baton, Victim 1 stated that other U.S. Capitol Police officers had been overrun in that location, and that officers' gear was likely strewn around

that area. Victim 1 added that the baton in NIX's possession appeared to Victim 1 to potentially differ in size from what is issued to U.S. Capitol Police and therefore may be NIX's personal baton. Here is NIX attempting to smash the doors:



19.     A short time later, after the doors were opened, NIX is observed handing his backpack to someone else (who is partially off-camera) and entering the U.S. Capitol Building with what appears to be the black baton.

20.     According to records obtained through a search warrant which was served on AT&T, on January 6, 2021, in and around the time of the incident, the cellphone associated with \*\*\*-\*\*\*-4003 was identified as having utilized a cell site consistent with providing service to a geographic area that included the interior of the U.S. Capitol Building. The phone number was in the name of "New NTAB, Inc." not in the name of NIX. A business entity query on the Alabama Secretary of State's web site listed NIX as the Director for "New NTAB, Inc." However, in August 2021, I received information from AT&T in response to legal process that identified a credit card in the name of NIX as being attached to the AT&T account.  AT&T also provided an address for the phone number's subscriber account that was listed as NIX's address in both open-source records and on NIX's driver's license.

21.     According to records obtained through a search warrant which was served on Google, a mobile device associated with the Google email address \*\*\*\*\*\*\*tab@gmail.com was present at the U.S. Capitol on January 6, 2021. Google estimates device location using sources including GPS data and information about nearby Wi-Fi access points and Bluetooth beacons. This location data varies in its accuracy, depending on the source(s) of the data. As a result, Google assigns a "map display radius" for each location data point. Thus, where Google estimates that its location data is accurate to within 10 meters, Google assigns a "maps display radius" of 10 meters to the location data point. Finally, Google reports that its "map display radius" reflects the actual location of the covered device approximately 68% of the time. In this case, Google location data

shows that a device associated with *******tab@gmail.com was within and outside of the U.S. Capitol from approximately 2:03PM ET to 4:02PM ET, on January 6, 2021.  The location data indicates that the device was present in the same area where NIX was captured on surveillance footage—in the southeast corner of the Capitol Building between at least 2:30 PM and 3:11 PM, approximately.

22.     The same phone number ***-***-4003 that had been identified by AT&T as having utilized a cell-site location within the Capitol Building on January 6 was also listed as the recovery SMS device for the Gmail account *******tab@gmail.com. In addition, the name associated with the Google account was "Greg Nix," and the recovery email account was an email account that included the names "Nix" and "Greg."

23.     Based on the foregoing, your affiant submits that there is probable cause to believe that GREGORY LAMAR NIX violated 18 U.S.C. § 1752(a)(1), (2), and (4), which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do so; (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; (4) knowingly engage in any act of physical violence against any person or property in any restricted building or grounds; or attempt or conspire to do so.  For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.  As noted above, NIX was within a posted, cordoned off, or otherwise restricted area of a building or grounds where the Vice President was temporarily visiting on January 6, 2021.  Your affiant further submits that there is probable cause to believe that NIX used or carried a deadly or dangerous weapon, specifically a baton and flagpole, during and in relation to his violations of 18 U.S.C. § 1752(a)(1), (2), and (4), under 18 U.S.C. § 1752(b)(1)(A).

24.     Your affiant submits there is also probable cause to believe that GREGORY LAMAR NIX violated 40 U.S.C. § 5104(e)(2)(D) and (F), which makes it a crime to willfully and knowingly (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress, or (F) engage in an act of physical violence in the Grounds or any of the Capitol Buildings.

25.     Your affiant submits there is also probable cause to believe that GREGORY LAMAR NIX violated 18 U.S.C. 231(a)(3), which makes it unlawful to commit or attempt to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function. For purposes of Section 231 of Title 18, a

federally protected function means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof. This includes the Joint Session of Congress where the Senate and House count Electoral College votes.

26.     Your affiant submits there is also probable cause to believe that GREGORY LAMAR NIX violated 18 U.S.C. § 1361, by willfully injuring or depredating of any property of the United States.

27.     Finally, your affiant submits there is probable cause to believe that GREGORY LAMAR NIX violated 18 U.S.C. § 111(a)(1) and (b), which makes it a crime to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in 18 U.S.C. § 1114. Persons designated within Section 1114 include any person assisting an officer or employee of the United States in the performance of their official duties.  In addition, your affiant submits there is probable cause to believe that NIX's violation of Section 111(a)(1) involved physical contact with the victim of that assault and the intent to commit another felony, and inflicted bodily injury on the victim under 18 U.S.C. § 111(b).  Finally, your affiant submits there is probable cause to believe that NIX, in the commission of his violation of Section 111(a)(1), used a deadly or dangerous weapon, specifically a flagpole.

_____
JYNIKA WILLIAMS
SPECIAL AGENT, FBI

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 26th day of October, 2021.

_____
ROBIN M. MERIWEATHER
U.S. MAGISTRATE JUDGE